UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

UNITED STATES OF AMERICA,

    -against-

MICHAEL BROWN and TYQUAN MIDYETT,

              Defendants.

**MEMORANDUM AND ORDER**

07-CR-874 (KAM)

------------------------------------------------------------------------ X

A P P E A R A N C E S:

Benton J. Campbell
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
    *By Elizabeth Latif and William E. Schaeffer,*
    *Assistant United States Attorneys*

Green & Willstatter
200 Mamaroneck Avenue, Suite 605
White Plains, New York 10601
    *Attorneys for Michael Brown*
    *By Richard D. Willstatter*

John Burke
26 Court Street, Suite 2805
Brooklyn, New York 11242
    *Attorney for Tyquan Midyett*

**MATSUMOTO, United States District Judge:**

## I. BACKGROUND

The government moves in limine by letter memorandum dated February 13, 2009 to preclude (1) cross-examination of its witness, Robert Griffin, as to two specified instances of prior conduct for which he was not convicted, and (2) introduction of evidence of the disposition

of charges against defendants Michael Brown and Tyquan Midyett brought by the Kings County District Attorney's Office, arising from the arrests of Brown and Midyett on January 9, 2007. (Doc. No. 254, "Feb. 13th Gov. Mem.")

Defendant Midyett does not oppose the motion. Defendant Brown opposes the motion by a letter memorandum dated February 16, 2009, arguing that at the very least, a voir dire hearing should be held outside the presence of the jury so that defense counsel may develop a foundation to cross-examine Griffin, and that the government should be directed to provide Brown with records stemming from any criminal prosecution of Griffin that resulted from the specific conduct the government seeks to preclude. (Doc. No. 255, "Feb. 16th Def. Opp." at 1-2.) Brown also argues that evidence of the dismissal of the state charges against Brown and Midyett arising from the January 9, 2007 arrest is relevant and admissible because it will explain why the police returned money seized from Midyett, and will "cast doubt" on the credibility of one of the government's witnesses, Police Officer Rene Samaniego. (Feb. 16th Def. Opp. at 2.)

For the reasons given below, the court grants the motion to preclude cross-examination of Griffin on the two specific instances of prior conduct described in the government's motion and to preclude evidence of the outcome of the state charges arising from the January 9, 2007 arrests of Brown and Midyett.

## II. DISCUSSION

### A. Factual Background

#### 1. *Robert Griffin*

According to the government's submissions, government witness Robert Griffin pleaded guilty to a narcotics conspiracy charge on February 6, 2007 and thereafter began

2

cooperating with the Federal Bureau of Investigation ("FBI"). (Feb. 13th Gov. Mem. at 2.) Griffin purchased narcotics at the direction of the FBI, which led to the indictment of defendants Brown and Midyett. (Id.) The government seeks to preclude cross examination of Griffin regarding the following:

> (1) When Griffin was 15 or 16 years old,1 he shot an individual named "Country" in the leg with a .32 caliber gun. The shooting occurred after "Country" had robbed Griffin by taking approximately $200.00 and crack cocaine from Griffin. A friend of Griffin's provided Griffin with the gun he used to shoot "Country."
>
> (2) In 2005, Griffin and an ex-girlfriend were involved in an altercation during which Griffin slapped her, grabbed her, and told her to go with him to his apartment. Griffin was arrested and the case was dismissed. During the pendency of the case, a temporary Order of Protection was issued, requiring Griffin to stay away from his ex-girlfriend."

(Id.) Griffin was never arrested for the shooting of "Country," as described in (1) above. (Id. at 5.)

### 2. *The January 9, 2007 Arrests*

It is undisputed that defendants Brown and Midyett were arrested on January 7, 2009 inside of Brown's apartment at 125 Nostrand Avenue, Apartment #2A, in Brooklyn, New York, and that the Kings County District Attorney's Office did not pursue prosecution of defendants Brown and Midyett in relation to these arrests. Approximately $1,700 in cash that was seized from Midyett's person during the January 9, 2007 arrest was later returned to him. (Feb. 16th Def. Opp. at 2.)

---

1 The government represents that Griffin is now 31 years old. Thus, the conduct described in (1) above occurred between 15 and 16 years ago.

3

### B. Griffin's Prior Conduct is Inadmissible under Rule 608(b).

#### 1. *The arguments of the parties*

The government contends that Griffin's prior conduct (described supra, § II.A.1) is not probative of truthfulness. (Feb. 13th Gov. Mem. at 4.) The government asserts that "it would be contrary to [Federal] Rules [of Evidence] 403 and 608(b)" to allow Griffin to be cross-examined on "collateral matters unrelated to trustworthiness" because the shooting occurred at least 15 years ago when Griffin was 15 or 16 years old, and because Griffin's altercation with his ex-girlfriend "would serve only to embarrass the witness and inflame the jury." (Id.) The government also asserts that there is "ample basis" to impeach Griffin, for example with his cooperation agreement and admission to narcotics activity. (Id.)

Defendant Brown states that "[w]e cannot and do not accept Griffin's story," and requests that the court "at least hold a *voir dire* hearing outside the presence of the jury to permit counsel to develop a foundation for the proposed cross-examination." (Feb. 16th Def. Opp. at 1.) With respect to the shooting when Griffin was 15 or 16 years old, Brown contends that "Griffin's willingness to shoot a man . . . evinces his willingness to commit crimes to achieve his ends without regard for criminal consequences or societal norms of decency." (Id.) Brown also claims that "Griffin has a greater than usual motive to curry favor with the government" because "he might be liable" for prosecution for the shooting over 15 years ago under 18 U.S.C. § 1959(a)(1), conspiracy to commit assault with a dangerous weapon in aid of racketeering activity, and other related crimes under § 1959. (Id. at 1-2.) Referring to the 2005 altercation between Griffin and his ex-girlfriend, Brown requests the underlying criminal complaint, claiming that "Griffin may be mistaken as to the outcome of his case," and that the criminal

4

history is therefore needed to determine how Griffin may be cross-examined. Brown suggests that "if Griffin was alleged to have violated a court order of protection, his willful disobedience of such an order might be more relevant than his abusive conduct toward his 'ex-girlfriend.'" (Id. at 2).

### 2. *Cross-Examination and Rule 608(b)*

The Confrontation Clause guarantees defendants the right to cross-examine government witnesses in order to test their truthfulness and discredit the witnesses by revealing the witnesses' "possible biases, prejudices, or ulterior motives" in relation to "the case at hand." United States v. Figueroa, 548 F.3d 222, 227 (2d Cir. 2008). This right is especially important "when applied to the government's star witness or to a witness who provides an essential link in the government's case." United States v. Paul, 194 Fed. App'x 792, 794 (11th Cir. 2006). Within the mandates of the Confrontation Clause, the court "may impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is . . . only marginally relevant." Figueroa, 548 F.3d at 227 (citations and quotations omitted). "A district court is afforded broad discretion in controlling the extent and scope of cross-examination." United States v. Wilkerson, 361 F.3d 717, 745 (2d Cir. 2004) (citations and quotations omitted). Cross-examination in general "should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Fed. R. Evid. ("Rule") 611(b).

Where evidence of specific acts is offered to attack the witness's character for truthfulness, its admission is governed by Rule 608(b). United States v. Patterson, 808 F.2d 969, 973-74 (2d Cir. 1987). Rule 608(b), entitled "Specific instances of conduct," states in relevant

5

part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609,[2] may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness[.]

Fed. R. Evid. 608(b).[3]

Under the plain mandate of Rule 608(b), extrinsic evidence of a witness's prior conduct may not be admitted to attack his truthfulness. Because of this categorical bar on extrinsic evidence of prior instances of conduct, the cross-examiner may not introduce documents or other proof to contradict a witness who denies committing the prior act or does not recall all or some of its details. Weinstein's Evid. Manual § 12.03[3][a]; United States v. Nelson, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005).

The court may, in its discretion, allow inquiry into specific instances of the conduct of a witness on cross-examination, but only if those acts are "probative of truthfulness or untruthfulness." Fed. R. Evid. 608(b); see also United States v. Cruz, 894 F.2d 41, 43 (2d Cir.), cert. denied, 498 U.S. 837 (1990); Nelson, 365 F. Supp. 2d at 386 (indicating that "Rule 608(b) is intended to be restrictive" and "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness") (quoting Jack B. Weinstein & Margaret A. Berger, Weinstein's Fed. Evid. § 608.22[2][c][i]). "Under Federal Rule of Evidence

---

[2] The court does not consider Fed. R. Evid. 609 in connection with the government's motion regarding Griffin because none of the acts at issue resulted in a conviction.

[3] Some prior conduct evidence regarding the witness is not subject to the strictures of Rule 608(b). For example, prior conduct admitted to show intent or identity may come in under Rule 404(b), and prior conduct to show bias may come in under the general right of confrontation. United States v. Schwab, 886 F2d 509, 511 (2d Cir.

6

608(b), the district court may restrict cross-examination about specific instances of prior conduct if it finds that the conduct is not probative of truthfulness." United States v. Flaharty, 295 F.3d 182, 191 (2d Cir.), cert. denied, 537 U.S. 936 (2002) and cert. denied sub nom. Johnson v. United States, 538 U.S. 915 (2003). The court "has discretion to admit evidence [under Rule 608(b)] only if it is probative of truthfulness or untruthfulness, is not extrinsic, and is presented during examination of either the principal witness or a character witness." 28 Charles A. Wright & Victor James Gold, Fed. Prac. & Proc. § 6118 (2008).

Assaults and murders do not directly reveal truthfulness in the way that forgery, perjury or fraud would. See Flaharty, 295 F.3d at 191 (stating that "[m]urder generally is not a crime of dishonesty"); United States v. Turcotte, 515 F.2d 145, 151 (2d. Cir.) (affirming, before the effective date of the Federal Rules of Evidence, the trial court's preclusion of cross-examination on a prior conviction for "atrocious assault" in part because it "did not relate to [witness]'s truthfulness[.]"), aff'd, 423 U.S. 1032 (1975); Weinstein's Evid. Man. § 12.03[3][a] (stating that "[a]cts such as forgery, perjury, and fraud are probative of untruthfulness, and are presumed admissible" under Fed. R. Evid. 608(b)).

### 3. *Rules 611 and 403*

In addition to determining whether, on cross-examination, a particular prior act is probative of truthfulness and therefore permissible under Rule 608(b), the court still must be guided by Rules 611 and 403 in deciding whether to exercise its discretion to allow cross-examination pursuant to Rule 608(b). Nelson, 65 F. Supp. 2d at 390.

---

1989), cert. denied, 493 U.S. 1080 (1990).

Rule 611 states, in relevant part:

(a) **Control by court.** The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

(b) **Scope of cross-examination.** Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

The court must also apply the mandate of Rule 403 to evaluate any evidence the parties seek to admit and determine whether

> its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

Thus, when considering the admission under Rule 608(b) of specific instances of conduct that the court finds probative of truthfulness, the court must also consider the Rule 403 and Rule 611 factors and balance "unfair prejudice, undue delay, or undue embarrassment of witnesses that might result from inquiring into a specific instance of conduct against the degree to which the conduct is probative of the witness's credibility." Nelson, 65 F. Supp. 2d at 390.

The court must also be mindful of the general requirements of the Confrontation Clause, weighing whether the potential cross-examination will expose "possible biases, prejudices, or ulterior motives," Figueroa, 548 F.3d at 227, especially "when applied to the government's star witness or to a witness who provides an essential link in the government's

case," Paul, 194 Fed. App'x at 794. The length of time that has passed since the alleged prior conduct is also relevant to the court's exercise of Fed. R. Evid. 608(b) discretion. See United States v. Schwab, 886 F2d 509, 513-14 (2d Cir. 1989), cert. denied, 493 U.S. 1080 (1990) (holding that prosecutor acted improperly in seeking to cross-examine defendant on "charges made twenty-three and eighteen years prior to the trial."); see also Turcotte, 515 F.2d at 151 (upholding preclusion of cross-examination about an assault 14 years earlier).

*4. Analysis*

The government here moves to preclude inquiry under Rule 608(b) into Griffin's shooting of "Country" at least 15 years ago, and his 2005 altercation with an ex-girlfriend. Cross-examination on specific prior acts under Rule 608(b) is only permissible upon the court finding that prior acts are "probative of truthfulness or untruthfulness," see Cruz, 894 F.2d at 43. If the court finds the prior acts probative of truthfulness or untruthfulness, the court must then balance any probative value against the centrality of the witness's testimony, the potential for unfair prejudice, undue embarrassment of the witness, the length of time that has passed since the prior conduct, and the other opportunities available for impeachment of the witness, as set forth, supra, at §§ II.B.2 and II.B.3.

First, there is nothing in the record suggesting that the shooting or the domestic altercation involved deceptiveness or dishonesty. There is nothing in the nature of such acts of violence that speaks directly to Griffin's truthfulness or untruthfulness. Defendant Brown argues only that the shooting indicates Griffin's general disregard for "criminal consequences or societal norms of decency," (Feb. 16th Def. Opp. at 1), and does not explain, much less assert, how the conduct is probative of truthfulness or untruthfulness. Given the considerable length of time

9

since the shooting, and the lack of any indicia of dishonesty in the nature of the shooting or the 2005 altercation between Griffin and his ex-girlfriend, the court finds that inquiry into these incidents on cross-examination would be more likely to embarrass Griffin and prejudice the jury against him than to assist the jury in evaluating his truthfulness. Although Griffin is certainly a central government witness here, there are ample other grounds to attack his credibility, including, as the government has pointed out, his conviction and his status as a government cooperator. The court, therefore, weighing all of the factors, determines that the probative value of Griffin's prior conduct is minimal compared to the potential for prejudice and jury confusion. The court therefore grants the government's motion to preclude such cross-examination under Rule 608(b).

The court notes, however, that Brown has also raised issues apart from Rule 608(b) about whether Griffin's potential liability for prosecution for the shooting of "Country" indicates a "greater than usual motive to curry favor with the government," (id. at 1-2), which would show bias. Brown has therefore requested to conduct a *voir dire* examination of Griffin to establish a foundation for this line of inquiry. (Id.) The government has not stated a position regarding this claim. The court grants Brown's request to conduct a *voir dire* examination of Griffin on the issue of whether the government has made any promises in regard to a possible prosecution for the shooting of "Country." If the government has indicated to Griffin that it will not prosecute the shooting of "Country" in exchange for Griffin's testimony as a prosecution witness in this case, Brown may inquire about this agreement to establish the extent of Griffin's possible bias. See United States v. Figueroa, 548 F.3d 222, 227 (2d Cir. 2008) (stating that a witness may be cross-examined regarding "possible biases, prejudices, or ulterior motives[.]")

The court's ruling does not prohibit Brown from examining Griffin at trial as to any consideration he has received from the government in exchange for his testimony. See Giglio v. United States, 405 U.S. 150, 154-55 (1972); United States v. Spinelli, 551 F.3d 159, 164 (2d Cir. 2008). The court orders the government to fully comply, if it has not already done so, with its disclosure obligations.

### C. Inquiry into Dismissal of the State Charges

The government argues that the Kings County District Attorney's Office's decision to decline to prosecute Brown and Midyett in relation to their January 9, 2007 arrests is irrelevant to the jury's determination of guilt in this case. (Feb. 13th Gov. Mem. at 5-6.) The government also asserts that admitting such evidence risks "misleading and confusing the jury." (Id. at 7.)

Brown contends that the decision to decline to prosecute Brown and Midyett in relation to their January 9, 2007 arrests is relevant because it "shows why the police gave Mr. Midyett back the approximately $1,700 in cash alleged to have been taken from his pocket." Brown also indicates that evidence of the disposition of the state charges will be important because he will attack alleged false statements in Officer Samaniego's grand jury testimony against Keisha Smith, who was arrested on January 9, 2007 with Brown and Midyett, and therefore needs to explain to the jury why Officer Samaniego did not also testify against Brown at that proceeding. Brown does not explain the relevance of Midyett's money being returned or Officer Samaniego not testifying against Brown in the state grand jury.

"[A] district court has discretion to exclude from evidence acquittals or other favorable outcomes of prior state court proceedings involving the same subject matter." United

11

States v. Marrero-Ortiz, 160 F.3d 768, 775 (1st Cir. 1998) (citing United States v. Viserto, 596 F.2d 531, 537 (2d Cir.), cert. denied, 444 U.S. 841 (1979)). "A judgment of acquittal is not generally admissible to rebut inferences that may be drawn from other evidence . . . and [does] not establish that [the defendant] was not guilty." United States v. Burrell, 43 Fed. App'x 403, 406-407 (2d Cir. 2002), cert. denied, 538 U.S. 937 (2003).[4] In this district, evidence of a prior acquittal has been held "inadmissible as irrelevant" under Fed. R. Evid. 401 because "[i]t takes a quantum leap of logic and a fractured syllogism to say that evidence of an acquittal tends to make government bias more probable than it would be without that evidence." United States v. Gambino, 818 F. Supp. 536, 539 (E.D.N.Y. 1993). In Gambino, the court also indicated that "evidence of a prior acquittal is not relevant because it does not prove innocence but rather merely indicates that the prior proceeding failed to meet it burden of proving beyond a reasonable doubt at least one element of the crime." Id. (quoting United States v. Kerley, 643 F.2d 299, 300-01 (5th Cir. 1981)); see also Schwab, 886 F2d at 511 ("An acquittal establishes that the defendant's perpetration of the charged misconduct has not been proven beyond a reasonable doubt.")

Even if evidence of a prior acquittal or dismissal of charges was relevant, the court would still be required to evaluate the evidence to determine whether "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In Gambino, the court held that, even if relevant,

---

[4] In the sentencing context, the Second Circuit has also held that, when considering evidence of other crimes for purposes of enhancing sentence, "[a] not-guilty verdict or other dismissal of criminal charges does not establish that the defendant was, in fact, innocent of those charges." United States v. Espinal, 38 Fed. App'x. 624, 626 (2d

12

evidence of a prior acquittal would be properly excluded under Fed. R. Evid. 403 because "the danger it would present for confusion of the issues and misleading the jury" would outweigh any probative value. Gambino, 818 F. Supp. at 539.

        The court, following the above-cited cases, finds that the decision of the Kings County District Attorney not to prosecute Brown and Midyett as a result of their January 9, 2007 arrests is not relevant to the jury's determination whether they are guilty of narcotics conspiracy and distribution, or whether Brown is guilty of gun possession, on that date. Brown's plan to cross-examine Officer Samaniego about inconsistencies in his prior testimony against Keisha Smith does not make the District Attorney's decision not to prosecute relevant. The court also finds that presenting evidence of the District Attorney's decision not to pursue Brown and Midyett's prosecution following their January 9, 2007 arrests risks confusing and misleading the jury. Pursuant to Fed. R. Evid. 401 and 403, the court therefore grants the government's motion to preclude evidence that the state charges were not pursued by the District Attorney.

---

Cir. 2002) (citing Marrero-Ortiz, 160 F.3d at 775).

## III. CONCLUSION

For the foregoing reasons, the court (1) precludes cross-examination of Griffin based on the shooting of "Country" and his 2005 altercation with his ex-girlfriend, (2) grants Brown's request to conduct a *voir dire* examination of Griffin outside the hearing of the jury, (3) orders the government to comply with its disclosure obligations if it has not already done so, and (4) grants the government's motion to preclude evidence that the Kings County District Attorney declined to prosecute Brown and Midyett upon their January 9, 2007 arrests.

**SO ORDERED**.

Dated: February 26, 2009
       Brooklyn, New York

_____/s/_____
**Kiyo A. Matsumoto**
United States District Judge